**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**In the Matter of the Search of**
**the Patient Records Located,**          **Case No. 2:10-mj-00037**
**on March 2, 2010, in a Safe at**
**35 West Third Avenue,**
**Williamson, West Virginia**

**<u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>**

Dr. Katherine A. Hoover, M.D., her bank accounts, a motor
vehicle, and her medical practice in Williamson, West Virginia,
were the subject of six warrants issued by the undersigned upon
application by the United States (Case Nos. 2:10-mj-28, -29, -32,
-33, -35 and -37). Pending before the Court are the following
motions filed by Dr. Hoover, *pro se*, with respect to this warrant:

1.  Motion to Vacate Search and Seizure Warrant of March 1, 2010
and for Remedial Action (docket # 9), filed June 14, 2010;

2.  Motion to strike response and to remove Assistant United States
Attorney ("AUSA") Monica K. Schwartz and United States Attorney
("USA") R. Booth Goodwin II from this case (# 12), filed July 7,
2010;

3.  Motion for an unbiased tribunal (# 13), filed July 7, 2010;

4.  Motion to recuse the undersigned (# 15), filed July 30, 2010;

5.  Motion to unseal the case (# 16), filed July 30, 2010;

6.  Motion for summary judgment (# 17), filed August 11, 2010, and
addendum (# 20), filed August 31, 2010;

7.  Motion for change of venue and case consolidation (# 19), filed August 31, 2010;

8.  Motion to have Clerk to execute summary judgment (# 21), filed October 5, 2010; and

9.  Motion for default judgment (# 22).

Procedural History

On February 25, 2010, FBI Special Agent James F. Lafferty, II applied for various search and seizure warrants, supported by his 32-page affidavit which summarizes an extensive investigation of Dr. Hoover (the "number one prescriber of controlled substances in West Virginia"), and describes her operation as a "pill mill." See, e.g., In the Matter of the Seizure of a 2007 BMW Model 335i, etc., No. 2:10-mj-00028, # 4, Redacted affidavit, ¶¶ 60, 70. The affidavit includes allegations that Dr. Hoover's practice received large amounts of cash from patients and payments from Medicare. Id., ¶ 69. When agents executed the various warrants on March 2, 2010, they found certain patient records in a safe located within the medical practice. On March 2, 2010, Assistant United States Attorney ("AUSA") Monica K. Schwartz applied for a warrant to search for and seize the patient records in the safe. In the Matter of the Search of the Patient Records Located, on March 2, 2010, in a Safe at 35 West Third Avenue, Williamson, WV, NO. 2:10-mj-00037, # 4. The undersigned issued the search and seizure warrant (# 6), which was promptly executed.

2

On June 14, 2010, Dr. Katherine A. Hoover filed a Motion to Vacate Search and Seizure Warrant of March 1, 2010 and for Remedial Action in this matter (# 9).  Dr. Hoover's Motion alleges that certain affidavits contain false information, that this Court lacks subject matter jurisdiction to issue a search warrant of a doctor, that various other warrants were issued in violation of law, that certain funds were illegally seized, and other matters.  Dr. Hoover attached to her Motion a portion of an autopsy report and seven autopsy photographs.

The Court advised Dr. Hoover that her Motion would be treated as a motion to return property filed pursuant to Rule 41(g), Federal Rules of Criminal Procedure, and directed the United States to file a response.  The autopsy report and photographs were placed under seal.  (Order entered June 14, 2010, # 8.)  In the Order, the undersigned wrote: "If Dr. Hoover wishes to challenge the seizure by federal agents of any other property, she must file an appropriate motion as to each warrant in the appropriate District." Id.

On June 28, 2010, the United States filed its Response (# 11). Dr. Hoover did not file a reply; however, over the past months, Dr. Hoover filed the motions listed above.

Nature of the Action and Authority of Magistrate Judge

The filing of the motions by Dr. Hoover has caused the undersigned to consider the nature of this action (civil vs.

criminal) and the authority of a magistrate judge to rule on the motions.

## Civil Proceeding vs. Criminal Proceeding

Rule 41(g)[1], Federal Rules of Criminal Procedure, provides as follows:

> **(g) Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

A motion for return of property "may be denied if the [person claiming the property] is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991); United States v. Rudisill, No. 09-7046, 358 Fed. App'x 421, 422, 2009 WL 5125627, *1 (4th Cir. Dec. 28, 2009).

Of importance is the fact that there is no criminal case pending against Dr. Hoover. Rule 41 is one of three criminal rules in a section titled "Supplementary and Special Proceedings." Search and seizure warrants are typically sought and issued before a criminal case is filed. Rule 1(a)(1) of the Criminal Rules

---

[1] Formerly Rule 41(e).

4

provides that the Criminal Rules "govern the procedure in all criminal proceedings." When there is no active criminal case filed by complaint, information or indictment, there is no "criminal proceeding."

Faced with this anomaly, the circuit courts of appeals have issued several decisions regarding disputes over property seized pursuant to a search warrant, when there is no active criminal case. The decisions are unanimous that a person's effort to obtain the return of seized property is civil in nature, and appeals from a district court decision are also civil. United States v. Martinson, 809 F.2d 1364, 1367 (9th Cir. 1987); United States v. Taylor, 975 F.2d 402, 403 (7th Cir. 1992); Hunt v. U.S. Dep't of Justice, 2 F.3d 96, 97 (5th Cir. 1993); United States v. Garcia, 65 F.3d 17, 19 n.2 (4th Cir. 1995); United States v. Holland, 214 F.3d 523, 527 (4th Cir. 2000).

Rule 41(g) motions are described as being "governed by equitable principles." Richey v. Smith, 515 F.2d 1239, 1243 (5th Cir. 1975); Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993); Chaim v. United States, 692 F. Supp.2d 461, 469 (D.N.J. 2010). Because of their nature as civil equitable proceedings, "a district court must exercise 'caution and restraint' before assuming jurisdiction." Chaim, id. (quoting Kitty's East v. United States, 905 F.2d 1367, 1370 (10th Cir. 1990)). In Ramsden, the Ninth Circuit listed the four factors set forth in Richey that a

district court should consider in deciding whether to entertain a
Rule 41 motion for return of property which is filed prior to the
initiation of criminal proceedings.

> These factors include: 1) whether the Government
> displayed a callous disregard for the constitutional
> rights of the movant; 2) whether the movant has an
> individual interest in and need for the property he wants
> returned; 3) whether the movant would be irreparably
> injured by denying return of the property; and 4) whether
> the movant has an adequate remedy at law for the redress
> of his grievance.

Ramsden, 2 F.3d at 325 (citing Richey, 515 F.2d at 1243-44).

In United States v. Norwood, 602 F.3d 830 (7th Cir. 2010)
(Posner, J.), the Seventh Circuit discussed at length the various
potential causes of action a claimant to seized property may have,
and the hurdles to be overcome by such a claimant, and reversed the
district court's denial of a claimant's Rule 41(g) motion.    In
Stuart v. Rech, 603 F.3d 409, 411 (7th Cir. 2010) (Posner, J.), the
Seventh Circuit further explained that "the only relief that can be
obtained under Rule 41(g) is a return of property."[2]

---

[2]   The undersigned has encountered some cases which hold that
in the absence of an active criminal proceeding, a claimant to
seized property must file a separate civil action similar to a
common law action for replevin, or an action under Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388
(1971).   See, e.g., In the Matter of the Search of the Scranton
Housing Auth., 487 F. Supp.2d 530, 533 (M.D. Pa. 2007); In the
Matter of the Search of S & S Custom Cycle Shop, 372 F. Supp.2d
1048, 1050-51 (S.D. Ohio, 2003).   These district court cases do not
carry the weight of the decisions by the circuit courts of appeals
and are inconsistent with them.

6

The Advisory Committee Notes provide information concerning the purpose of Rule 41(g) and the standard for review of a motion for return of property.  In 1944, the Federal Criminal Rules were adopted.  In 1972, Rule 41 was amended to provide "for a return of the property if (1) the person is entitled to lawful possession *and* (2) the seizure was illegal.  Advisory Committee Notes on 1972 Amendments.  In 1989, the Rule was amended again.

> As amended, Rule 41(e) provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.
>
> No standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property.  The fourth amendment protects people from unreasonable seizures as well as unreasonable searches, <u>United States v. Place</u>, 462 U.S. 696, 701 (1983), and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property.  If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable.  But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.
>
>                         *  *  *
>
> Rule 41(e) is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if the evidence might have been unlawfully seized.  <u>See</u>, <u>e.g.</u>, <u>United States v. Calandra</u>, 414 U.S. 338, 349 n.6 (1978). * * *
>
>                         *  *  *
>
> * * * The amended rule recognizes that reasonable accommodations might protect both the law enforcement

interests of the United States and the property rights of
property owners and holders. * * *

Advisory Committee Notes to 1989 Amendments.

### Authority of Magistrate Judge

When the Criminal Rules were adopted in 1944, commissioners
(predecessors to magistrate judges) were not authorized to rule on
motions to return property.  Advisory Committee Notes on 1944
Adoption.  Thus 28 U.S.C. § 636(a)(1), which provides that "[e]ach
United States magistrate judge . . . shall have . . . all powers
and duties conferred or imposed upon United States commissioners,"
provides no authority for magistrate judges to rule on such
motions.  In 1989, Rule 41 was amended to address the role of a
magistrate judge:

> The word "judge" is changed to "court" in the second
> sentence of subdivision (e) [now the third sentence of
> subdivision (g)] to clarify that a magistrate may receive
> evidence in the course of making a finding or a proposed
> finding for consideration by the district judge.

Advisory Committee Notes to 1989 Amendments.  This language
suggests that a magistrate judge could either rule on the motion or
file proposed findings and recommend a ruling.  The current version
("The court must receive evidence on any factual issue necessary to
decide the motion") gives weight to the view that a magistrate
judge is authorized to decide the motion, because Criminal Rule
1(b)(2) defines "court" as a "federal judge," and the definitions

8

of "federal judge" in Rule 1(b)(3) include a magistrate judge.[3]

As a precautionary measure, the undersigned requested assignment of a district judge to Dr. Hoover's motions.  The Hon. John T. Copenhaver, Jr. drew the assignment (# 23), and referred the motions to the undersigned (# 24).  The referral order states that I am "designated to consider the briefing, pleadings, and evidence and, to the extent required, submit to the court her proposed findings of fact, conclusions of law and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72.1(a), Local Rules of Civil Procedure."  (Order entered Nov. 8, 2010, # 24.)   Section 636(b)(1)(B) contemplates the filing of proposed findings and recommendations for disposition. Accordingly, the undersigned will recommend a ruling on the motion for return of property (# 9), the motion for summary judgment (# 17) and addendum (# 20), and the motion for default judgment (# 22).  The other motions which are not dispositive of the property will be addressed in a separate order.

---

[3]    Magistrate Judge Goodstein has issued a series of decisions, see, e.g., In the Matter of the Search of 4330 North 35th Street, Milwaukee, WI, 142 F.R.D. 161, 165-66 (E.D. Wis. 1992), which hold that a magistrate judge is empowered to resolve motions for return of property.  It appears that his rulings have not been appealed.  I have found other cases which indicate that, absent a referral order, a magistrate judge is not authorized to rule on a motion for return of property.  Rech, 603 F.3d at 411; Scranton Housing Authority, 487 F. Supp.2d at 534-35; S & S Custom Cycle Shop, 372 F. Supp.2d at 1052.

Motion to Vacate Warrant and for Remedial Action (# 9)

The following assertions are excerpted from Dr. Hoover's motion:

> * * * this court lacked subject matter jurisdiction. Further the Court failed to verify the information provided and its jurisdiction. The Court has failed to protect the innocent patients of the practice . . .. The action by the Court violates treaty. As the Court is aware, treaty law supercedes constitutional law and eliminates immunity. The Court produced a fraudulent document by signing the search and seizure warrant on March 1, 2010 because the affidavits produced were fraudulent and the court lacked subject matter jurisdiction.

> The Court could not have reviewed the affidavits properly because the alleged affidavits contained false information. * * * All moneys deposited in WesBanco were from the settlement from our lawsuit against the Jail Authority.[4]

> The State of West Virginia makes it illegal to lie or withhold information from a doctor to obtain narcotics. * * * The law was in effect when the informants lied to Dr. Hoover and her associates. Therefore, Assistant Prosecutor Monica Schwartz and anyone else involved in lying to a doctor are guilty.

> The United States Supreme Court in Gonzales v. Oregon, 546 U.S. 243, eliminated federal jurisdiction over doctors who prescribed legal medications. * * *

> The invasion of the office * * * was a violation of international treaties to which the United States is a signatory. * * * With violation of treaty law, all immunities are lost and federal jurisdiction is eliminated.

> Ms. Monica Schwartz * * * is guilty of using the color of her office to illegally, without subject matter jurisdiction, entrap doctors in violation of West

---

[4] This assertion appears to relate to Case No. 2:10-mj-00029, a seizure warrant for a Wesbanco Bank account.

Virginia law and federal law.  Ms. Schwartz knowingly
filed fraudulent documents with this Court to illegally
obtain documents, money, vehicles, and property.  Ms.
Schwartz knew she lacked subject matter jurisdiction, but
she proceeded anyway.  Ms. Schwartz failed to provide a
list of the items seized.  Ms. Schwartz did not send a
copy of the search and seizure warrant[s]. * * *

       There have been multiple entries onto our property
in Harrison County after the expiration date of the
search warrant. * * *

       Our boat in Green Cove Springs, Florida was broken
into and the phone numbers to federal agents and other
information . . . were stolen. * * *

       Prior to the search and seizure of March 2, 2010, my
notebook was stolen. * * *

                        * * *

       The judiciary at both state and federal levels has
a serious lack of ethics.  The allegations made are both
jurisdictionally correct and provable.  The judges have
an obligation to vacate the search and seizure warrants
and return everything that was taken including the items
stolen and not placed on a list.  Monica Schwartz and
others are guilty of fraud and therefore contempt of
court.  The Court must order the formation of a special
task force on human rights to investigate and prosecute
all the concerns raised in this document.  To do less
than form a task force is a human rights violation which
eliminates federal judicial jurisdiction and immunity.

       WHEREFORE, Katherine A. Hoover MD requests that this
Court find Ms. Monica Schwartz in Contempt of Court, that
a proper investigation be done regarding multiple human
rights violations, and that all property be returned and
damages paid for property damage and lost wages.

(# 9, at 1-4.)

     The Response of the United States notes that the execution of

the warrants occurred on March 2, 2010, not on March 1, as Dr.

Hoover asserts.  (# 11, at 1.)  It asserts that Dr. Hoover has

                           11

offered no relevant legal authority to support her contentions regarding lack of jurisdiction or authority.  Id. at 2.  The government argues that Dr. Hoover has failed to show that she is entitled to possession of the patient records which were in the safe.  Id.  The United States contends that the records are related to an ongoing federal investigation and are therefore needed by the government.  Id. at 3.  In support of their arguments, the Response cites Rudisill, 358 Fed. App'x at 422, 2009 WL 5125627 at *1.

When the Richey factors are applied to the instant search warrant, it becomes apparent that Dr. Hoover's Rule 41(g) motion should not be entertained.  The United States did not display a callous disregard for the constitutional rights of Dr. Hoover; the government applied for a search warrant, observing the requirements of Rule 41.  While Dr. Hoover has an individual interest in her patients' files, she has not demonstrated a need for those files; she has indicated that she has taken up residence in Nassau, the Bahamas, and obviously cannot practice medicine on West Virginia patients from that distance.  Dr. Hoover has similarly failed to show that she will be irreparably injured by denying her request for return of the property; her apparent abandonment of her medical practice in Williamson, West Virginia indicates that she has no need for these patients' files.  Finally, it is arguable that the patients' files are the property of the patients, not Dr. Hoover, and thus it is irrelevant whether she has an adequate remedy at

12

law.  This litigation should not be entertained further.

Dr. Hoover's motion does not claim ownership of the patients' files, and she does not dispute that the United States has a continuing investigation.  Her claims of lack of jurisdiction, violation of an unnamed treaty, violation of West Virginia law, and fraud are unsubstantiated and irrelevant.  The undersigned proposes that the presiding District Judge **FIND** that Dr. Hoover's motion for return of property (# 9) fails to meet the four <u>Richey</u> factors for consideration under equitable principles and that there is an ongoing investigation by the United States.

<u>Recommendation</u>

It is respectfully **RECOMMENDED** that Dr. Hoover's motion for return of property (# 9) be denied.

<u>Motion for Summary Judgment (# 17) and Addendum/Motion for Declaratory Judgment (# 20)</u>

In the motion for summary judgment (# 17), Dr. Hoover requests that all the seized items be returned to her, that another physician be allowed to reopen the medical clinic, and that the Court prohibit arrest and further investigation of her.  She also seeks an award of $20,000 per month in compensatory damages for her inability to practice medicine.  She alleges that she has been monitored successfully by the West Virginia Board of Medicine.

Dr. Hoover also relies on <u>Gonzales v. Oregon</u>, 546 U.S. 243 (2006), for the proposition that the Supreme Court ruled that the

United States cannot investigate doctors with respect to their prescription practices.  She renews arguments made in her motion for an unbiased tribunal (# 13).

In Gonzales, the Supreme Court addressed an Interpretive Rule issued by the Attorney General in 2001 concerning the Oregon Death With Dignity Act.  The Supreme Court held that the federal Controlled Substances Act does not allow the Attorney General to prohibit doctors from prescribing regulated drugs for use in physician-assisted suicide under state law permitting the procedure.  546 U.S. at 274-75.  The Court noted that the Controlled Substances Act and Supreme Court precedent "amply support the conclusion that Congress regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood."  Id. at 270.  The United States Attorney's Office retains its authority, in its discretion, to investigate whether a medical practitioner with authority to prescribe controlled substances is engaged in illicit drug dealing.

Dr. Hoover complains that she is suffering from stress, and that she had to move to the Bahamas to receive medical care and for safety.  Dr. Hoover contends that statements in the affidavit in support of the warrant applications are slanderous.  She argues that lack of enforcement action against her by the West Virginia Board of Medicine constitutes "prima facie evidence that there was

14

no illegal drug prescribing by Dr. Hoover."  (# 17, at 4.)

     In the Addendum and Motion for Declaratory Judgment (# 20), Dr. Hoover asserts that her practice has been reviewed and supervised by the West Virginia Board of Medicine, and that her office used the pain treatment guidelines promulgated by the Board. She states that she taught her patients to read and encouraged them to take the GED.  Dr. Hoover argues that the federal agents and AUSA Schwartz are the criminals; the doctor has immunity.  Some of her allegations pertain to a search warrant that was issued by a magistrate judge in the Northern District of West Virginia for Dr. Hoover's property in Harrison County.  This Court has no involvement in that matter.  She also complains about entries into her property in Florida; again, this Court has no involvement in that matter.  After making additional accusations against the undersigned and other judicial officers, Dr. Hoover claims damages in excess of $7.5 million.  Again relying on <u>Gonzales</u>, Dr. Hoover claims immunity from prosecution by the United States, that her property be returned, and that a decision be made on the pleadings.

     Dr. Hoover's motion is a broadside attack on the authority of the United States to investigate Dr. Hoover's medical practice; it does not dispute the specific facts set forth in Special Agent Lafferty's affidavit.  While Criminal Rule 41(g) requires that the Court "<u>must</u> receive evidence on any factual issue necessary to decide the motion," there do not appear to be specific factual

15

issues relating to these particular patient files which need to be resolved.  The Court cannot simply accept Dr. Hoover's statements and invalidate the warrant.  When the undersigned issued the warrant, it found probable cause to believe that the statements in the affidavits showed that Dr. Hoover was violating the law and receiving large sums of money for doing so.  For the reasons set forth above with respect to the motion for return of property, and particularly in light of the investigation by the United States, the undersigned proposes that the presiding District Judge **FIND** that Dr. Hoover has failed to show grounds for invalidation of the subject warrant and return of the patient files to her.

Dr. Hoover has requested that the Court award her compensatory damages.  Such a claim cannot be made in these various motions relating to her motion for return of property; Dr. Hoover must file a completely separate civil complaint if she claims that she is entitled to damages.  Stuart v. Rech, 603 F.3d 409, 411 (7th Cir. 2010); United States v. Jones, 225 F.3d 468, 469-70 (4th Cir. 2000); United States v. Bein, 214 F.3d 408, 413-15 (3rd Cir. 2000).  The undersigned proposes that the presiding District Judge **FIND** that Dr. Hoover is not entitled to money damages in connection with her motion for return of property.

Recommendation

It is respectfully **RECOMMENDED** that Dr. Hoover's motion for summary judgment (# 17) and addendum/motion for declaratory

16

judgment (# 20) be denied.

Motion for Default Judgment (# 22)

Dr. Hoover's motion argues that the United States is in default for not answering her motion for summary judgment and asserts that she should be awarded a sum certain, $7,635,723.58, and that the sum should be multiplied by three.  As noted immediately above, a civil action for damages against the United States cannot be incorporated in a motion for return of property. If Dr. Hoover believes that she has a claim against the United States and its employees other than for the return of seized property, she must raise that claim in a separate civil action. Her efforts to obtain return of the property seized pursuant to the search warrants are governed by Criminal Rule 41(g).  The United States is not in default because default and summary judgment are not procedures which are followed with respect to Criminal Rule 41(g).  It is respectfully **RECOMMENDED** that this motion be denied.

Notice

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of

17

filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations, to transmit it to counsel of record, and to provide it to Dr. Hoover via telefax to 242-328-4014 or, alternatively, by  courier service such as Federal Express.


<u>November 17, 2010</u>
         Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge


18